**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

|  |  |  |
|---|---|---|
| | x | |
| DIETGOAL INNOVATIONS LLC, | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | 13-cv-08391 (PAE) |
| -against- | : | |
| | : | |
| BRAVO MEDIA LLC, | : | |
| | : | |
| *Defendant.* | : | |
| | x | |

_____

---

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
BRAVO MEDIA LLC'S MOTION FOR SUMMARY JUDGMENT
OF PATENT INELIGIBILITY PURSUANT TO 35 U.S.C. § 101**

---

**BUETHER JOE & CARPENTER, LLC**

Eric W. Buether
Christopher M. Joe
Michael D. Ricketts

1700 Pacific Avenue
Suite 4750
Dallas, Texas 75201
Telephone:     (214) 466-1271
Facsimile:      (214) 635-1827

**ATTORNEYS FOR PLAINTIFF
DIETGOAL INNOVATIONS LLC**

# TABLE OF CONTENTS

I.     PROCEDURAL BACKGROUND .......................................................................... 1

II.    FACTUAL BACKGROUND ............................................................................... 1

    A.    The `516 Patent. .................................................................................... 1

    B.    The `516 Patent Specification. ............................................................. 2

    C.    The Claims of the `516 Patent and Reexamination Certificate ............................... 3

    D.    The Claim Construction Ruling of the Eastern District of Texas. ........................ 5

III.    ARGUMENT ................................................................................................. 6

    A.    The Section 101 Patent Eligibility Standard ......................................... 6

        1.    The Scope of Patent Eligibility Under § 101 is Broad ............................. 6

        2.    The Judicially Created Exceptions to § 101's Broad Patent Eligibility Principles Must be Narrowly Construed ................................... 7

        3.    Bravo Must Establish that the Claims of the `516 Patent and Reexamination Certificate are Not Patent Eligible by Clear and Convincing Evidence ................................................................ 8

        4.    The Abstract Ideas Exception Applies Only to Preexisting Fundamental Truths, Such as Mathematical Formulas, that are Equivalent to a Law of Nature ................................................ 9

        5.    A Computer Implemented Invention is a Patentable Machine and Cannot be an Abstract Idea in the Disembodied Concept Sense ............. 12

        6.    A Claim to the Application of an Abstract Idea is Patent Eligible .......... 13

        7.    At this Stage of the Proceedings Bravo Must Establish that the Only Plausible Construction of Each Claim Renders the Subject Matter of the Claim Ineligible as a Matter of Law by Clear and Convincing Evidence ................................................................ 15

    B.    The Claims of the `516 Patent and the Reexamination Certificate are Patent Eligible Under § 101 .......................................................... 16

        1.    The Claims of the `516 Patent and the Reexamination Certificate are Computer Implemented Inventions Qualifying as Eligible Subject Matter under § 101 ....................................................... 16

i

2.      The Claims of the `516 Patent and the Reexamination Certificate Do Not Claim an Abstract Idea................................................................. 18

3.      The Federal Circuit and District Court Cases Cited by Bravo are Distinguishable ......................................................................................... 20

IV.    CONCLUSION.............................................................................................................. 23

## TABLE OF AUTHORITIES

**Cases**

*Accenture Global Servs. v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013)....................................................................................20

*Application of Chatfield*,
    545 F.2d 152 (C.C.P.A. 1976).................................................................................. 13

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co. of Canada (U.S.), L.L.C.*,
    687 F.3d 1266 (Fed. Cir. 2012)...................................................................................21

*Bilski* v. *Kappos*,
    130 S. Ct. 3218 (2010).......................................................7, 8, 10, 12, 13, 18, 19

*Burr* v. *Duryee*,
    68 U.S. (1 Wall.) 531 (1863)................................................................................ 13

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
    717 F.3d 1269 (Fed. Cir. 2013)............................................................. 9, 20, 21

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)................................................................21, 22

*Diamond* v. *Chakrabarty*,
    447 U.S. 303 (1980) ........................................................................................ 6, 7

*Diamond v. Diehr*,
    450 U.S. 175 (1981) ......................................................................... 10, 11, 13, 14

*Dietgoal Innovations LLC v. Kellan Rest. Mgmt. Corp.*,
    2014 U.S. Dist. LEXIS 19047 (E.D. Tex. Feb. 13, 2014) ..........................................2, 5, 6

*Examination Guidelines*,
    61 Fed. Reg. 7478 (1996) ..................................................................................... 14

*Fonar Corp. v. General Elec. Co.*,
    107 F.3d 1543, 41 USPQ2d 1801 (Fed. Cir. 1997) .........................................................17

*Funk Bros. Seed v. Kalo Inoculant Co.*,
    333 U.S. 127 (1948)............................................................................................. 14

*Gottschalk* v. *Benson*,
    409 U.S. 63 (1972) ................................................................ 10, 11, 12, 14, 19

iii

*In re Alappat*,
  33 F.3d 1526 (Fed. Cir. 1994)..................................................................................17

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
  2013 U.S. Dist. LEXIS 166852 (S.D.N.Y. Nov. 22, 2013)...............................................21

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  132 S. Ct. 1289 (2012).........................................................8, 9, 10, 12, 13, 14, 18, 19

*MySpace, Inc. v. GraphOn Corp.*,
  672 F.3d 1250 (Fed. Cir. 2012) ...............................................................................9

*Parker v. Flook*,
  437 U.S. 584 (1978)...................................................................................11, 14, 19

*Research Corp. Techs., Inc. v. Microsoft Corp.*,
  627 F.3d 859 (Fed. Cir. 2010) ...............................................................................7

*Ultramercial, Inc. v. Hulu*, LLC,
  722 F.3d 1335 (Fed. Cir. 2013)................................................................7, 8, 9, 15, 16

## **Statutes**

35 U.S.C § 100.............................................................................................. 16

35 U.S.C. § 101 ......................................................................................... *passim*

35 U.S.C. § 102 ...............................................................................................7, 8

35 U.S.C. § 103 ...............................................................................................7, 8

35 U.S.C. § 112 ...............................................................................................7, 8

Plaintiff DietGoal Innovations LLC ("DietGoal") files this response to the motion for summary judgment of patent ineligibility pursuant to 35 U.S.C. § 101 (Dkt. No. 128) filed by Defendant Bravo Media LLC ("Bravo").[1]

## I.    PROCEDURAL BACKGROUND

DietGoal filed this lawsuit against Bravo in the Eastern District of Texas asserting that Bravo infringed United States Patent No. 6,585,516 (the "`516 Patent") and the `516 Patent Reexamination Certificate ("Reexamination Certificate").   Bravo has filed an answer and counterclaims.   The case was ultimately transferred to this Court in November 2013.   On January 22, 2014, the parties participated in a scheduling conference with the Court.   On March 19, 2014, Bravo filed its motion for summary judgment of patent ineligibility.   The Court has not issued any claim construction ruling regarding any of the claims of the `516 Patent or the Reexamination Certificate."

## II.    FACTUAL BACKGROUND

**A.    The `516 Patent.**

The `516 Patent "relates to the field of computerized based methods of employing visual techniques for training individuals to modify [dietary] behavior," and is directed towards "[a] system and method for computerized visual behavior analysis, training, and planning."   `516 Patent, Abstract and Col. 1:8-10.   A copy of the `516 Patent is attached as Exhibit A to the Declaration of Eric W. Buether.

The `516 Patent issued with 18 claims on July 1, 2003 based upon an application filed January 9, 2002.   An *inter partes* reexamination resulted in the issuance of a Reexamination Certificate on October 2, 2013. A copy of the Reexamination Certificate is attached as Exhibit B to the Declaration of Eric W. Buether.   The reexamination confirmed the patentability of claims

---

[1]  Bravo's Memorandum of Law in support of its Motion for Summary Judgment is referred to herein as "Bravo MSJ Brief."

1-18, added new claims 19-61 and added a priority claim through a series of prior applications, the earliest of which dates to December 14, 1998.  *See Dietgoal Innovations LLC v. Kellan Rest. Mgmt. Corp.*, 2014 U.S. Dist. LEXIS 19047 at *11 (E.D. Tex. Feb. 13, 2014).

**B.      The `516 Patent Specification.**

The specification of the Patent explains that the invention addresses the following needs in the field:

> No effective **tools** exist for either health professionals or the public that can adequately train people to understand and immediately recognize the significance of (1) the impact of customized meals on dietary goals; (2) the value and amount of specific macro and micro nutrients in different foods; (3) the potentially harmful effects of other naturally occurring substances found in many foods; and (4) the relative quantities of different food choices.  Nor are there any **planning tools** that can show people how to create meals using food choices that are much more healthful for them and their families.  In addition, no **planning tools** exist that use natural visual techniques to assist people to follow diet programs designed by health professionals.
>
> Finally, no **tools** exist that allow user's [sic] to incorporate a behavior analysis into their eating goals, and their training or planning for meeting those eating goals.

Col. 1:24-50 (emphasis added).  The `516 Patent, therefore, addresses a computerized method and system that is used as a **tool** in dietary training and planning, which cannot be performed or implemented without the use of a computer.

The specification teaches that "[t]he present invention can solve the above problems by providing a system and method for computerized behavior analysis, training and planning.  The system of programs can include a User Interface (UI), a Meal Database, a Food Database, Picture Menus, and a Meal Builder."  Col. 2:16-20.  A "Picture Menu" is provided by the computerized systems and methods so that a user may choose meals for a particular time period to correspond to a customized eating plan.  `516 Patent, Abstract, Figures 4-7.  A Meal Builder allows a user to

2

edit or create new meals and view the meals' impact on the user's customized eating goals.  `516 Patent, Abstract, Figures 8-9, Col. 2:65-Col. 3:1.

The User Interface "can receive commands from the user and display results to the user from the 'Picture Menus' and 'Meal Builder.'"  Col. 2:21-24.  The specification further teaches that "[t]he Meal Builder can be a very useful tool, not only for modifying and personalizing Picture Menus, but also for designing meals and picturing favorite recipes."  Col. 3:1-4.  The specification describes an alternative embodiment where the Meal Database and the Food Database can be used for dietary behavior analysis which compiles and analyzes specific information about a user's eating preferences and tendencies and compares this information to a set of customized eating goals.  Col. 2:29-41.  The specification also describes an exemplary method for computerized behavior analysis, training, and planning as including the following steps:

> First, the Meal Database and Food Database can be prepared.  Second, the user can choose meals for a particular day.  Third, the user can decide whether or not to change one or more of the meals he has chosen for the particular day.  If the user decides to change his chosen meals, the user can edit or create new meals using the Meal Builder.  If the user decides not to change his choices, or after the user changes his choices, the user can save the meals for the particular day.

Col. 3:11-20.  The specification contains figures depicting the underlying architecture of an exemplary embodiment of the invention, as well as flow charts of an exemplary process.  `516 Patent, Figures 1-3.

## C.    The Claims of the `516 Patent and Reexamination Certificate.

Independent Claims 1 and 2 of the '516 Patent describe the systems of "computerized meal planning."   These system claims each recite a User Interface and a Database of food objects, described above.  The third element of these system claims comprises either "at least one Picture Menus" or "a Meal Builder."   The structure of these elements is defined by the

descriptions that follow.   The structure of the "at least one Picture Menus" must be such that it "displays on the User Interface meals from the Database that a user can select from to meet customized eating goals."   The structure of the "Meal Builder" is defined so that it "displays on the User Interface meals from the Database, and wherein a user can change content of said meals and view the resulting meals' impact on customized eating goals."   The requirement that the Picture Menus or the Meal Builder be so designed as to allow a user to make certain selections is not a recitation of a process but of the required structure of these elements.   The function of these elements is to allow a user to select or change content of meals to fulfill the purpose of meeting customized eating goals or viewing the impact on such goals.

Dependent Claims 3-11 provide different combinations of these structural limitations as well as additional structural limitations.   For example with regard to Claim 7, a "user's instinctive tendencies and preferences" are determined by presenting graphical food options to the user, translating the information into nutritional categories, and recording and compiling the user's choices through the use of the computerized meal planning system.   Claim 8 requires that the Food Database and Meal Database "are based on a behavior analysis comprising collecting and analyzing specific information on a user's instinctive tendencies and preferences."   Claim 9 requires that the behavior analysis further comprise "comparing the specific information to a set of goals," and Claim 10 requires "collecting and analyzing specific information on a user's instinctive eating tendencies and preferences."

Independent Claims 12 and 13 recites the method "of computerized planning."   These method claims require a computerized program to perform each specific step.   The step of allowing a user to choose meals from one or more Picture Menus is further modified by the requirement that the Picture Menus "display on a [computerized] User Interface meals comprised from the food objects from the Database" for the purpose of enabling the user to "mix and

match" such food objects "to meet customized eating goals."  These steps are *not* performed *by* the user but *by* the *computerized program*.  Allowing user interaction is simply a functional purpose of this step.  Dependent Claims 14-18 further modify method Claim 12 similar to dependent Claims 3-11, described above.  The new claims added during reexamination add numerous additional computer implemented limitations, including commands for various computerized functions, displays of various information in response to inputs from a user, selection options available to a user, database storage requirements, as well as a database search function and compute function.  *See* Declaration of Eric W. Buether – Exhibit C.

**D.      The Claim Construction Ruling of the Eastern District of Texas.**

In the related DietGoal litigation pending in the Eastern District of Texas, the Texas court issued a claim construction ruling on February 13, 2014, construing numerous claim terms of the `516 Patent.  *Dietgoal Innovations LLC v. Kellan Rest. Mgmt. Corp.*, 2014 U.S. Dist. LEXIS 19047 (E.D. Tex. Feb. 13, 2014).

The Texas court found that all of the claims required the claimed system or method to be "computerized," finding that "[t]he preamble use of 'computerize' [in each independent claim] gives the necessary life and meaning to these other claim terms that are indicative of a computerized system."  *Id.* at *24.  The Texas court also determined that the language "to meet customized eating goals" used in independent system claim 1 was a "meaningful limitation" as to the operation of the Picture Menus.

The Texas court further ruled that "the 'customized eating goals" described in the claims of the Patent "are computer implemented."  *Id.* at 37-38.  The court observed that "the entirety of the specification describes customized eating goals that are implemented on the computer," and emphasized that:

> There is no indication in the specification of the eating goals being merely a mental process. Further, what is described as a "customized" goal in the context of the intrinsic record as a whole is a goal that is computer implemented not merely a user's personal mental objective. Finally, the prosecution history leaves no doubt that claims are directed toward computer implemented systems and methods.

*Id*. at \*39-40.  The Texas court further found that, during reexamination, "the patentee made clear that mental processes are not being claimed."  *Id*. at \*40.  Thus the court construes "customized eating goals" to be "computer implemented, user-specific, dietary objectives."  *Id*. at \*43.

The Texas court construed "Picture Menus" to mean "a visual display of at least one image of a meal that a user can select a meal from," *id*. at \*55, construed "Meal Builder" to be mean "a computer program that allows the user to create or change a meal and view the meal's impact on customized eating goals," *id*. at \*62, and construed "User Interface" to mean "software through which a user sends commands and views displayed results."  *Id*. at \*68.

For all of these reasons, the Court should deny Bravo's motion for summary judgment of patent ineligibility pursuant to 35 U.S.C. § 101.

## III.     ARGUMENT

**A.     The Section 101 Patent Eligibility Standard**

### 1.     The Scope of Patent Eligibility Under § 101 is Broad

Section 101 of the Patent Act describes four broad categories of inventions or discoveries that are eligible for patent protection:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101.  The Supreme Court has made clear that the scope of § 101 is broad: "In choosing such expansive terms … modified by the comprehensive 'any,' Congress plainly contemplated that the patent laws would be given wide scope."  *Diamond* v. *Chakrabarty*, 447

U.S. 303, 308 (1980). "Congress took this permissive approach to patent eligibility to ensure that '"ingenuity should receive a liberal encouragement."'" *Bilski* v. *Kappos*, 130 S. Ct. 3218, 3225 (2010) (quoting *Chakrabarty*, 447 U.S. at 308-09).

The limited role of § 101 is confirmed by other aspects of the Patent Act. As § 101 itself expresses, subject matter eligibility is merely a threshold check; patentability of a claim ultimately depends on "the conditions and requirements of this title," such as novelty, non-obviousness, and adequate disclosure. 35 U.S.C. § 101; *see Bilski*, 130 S. Ct. at 3225 (characterizing § 101 as a "threshold test"). Section 101 was not intended by Congress to screen out all claimed inventions that are undeserving of patent protection, but was instead designed to serve as at best a "coarse eligibility filter." *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 869 (Fed. Cir. 2010). Congress made it clear that the expansive categories—process, machine, article of manufacture, and composition of matter—are not substitutes for the substantive patentability requirements set forth in §§ 102, 103, and 112 and invoked expressly by § 101 itself.

### 2. The Judicially Created Exceptions to § 101's Broad Patent Eligibility Principles Must be Narrowly Construed

The Supreme Court has recognized that "§ 101's broad patent-eligibility principles" are subject to specific judicially created exceptions: "'[L]aws of nature, physical phenomena, and abstract ideas,'" even if newly discovered, are not eligible for a patent. *Bilski*, 130 S.Ct. at 3225. Given that these judicial exceptions are in derogation of § 101's expansive definition of patent-eligible subject matter, courts have recognized that these exceptions must be construed narrowly. *See, e.g., Ultramercial, Inc. v. Hulu*, LLC, 722 F.3d 1335, 1341 (Fed. Cir. 2013) ("In line with the broadly permissive nature of § 101's subject matter eligibility principles and the structure of the Patent Act, case law has recognized only three narrow categories of subject

matter outside the eligibility bounds. . . . To sum up, one of the principles that must guide our inquiry is these exceptions should apply narrowly.")  As the Supreme Court has made clear, too broad an interpretation of these exclusions from the grant in § 101 "could eviscerate patent law." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012); *cf. Bilski*, 130 S. Ct. at 3226 ("This Court has not indicated that the existence of these well-established exceptions gives the Judiciary carte blanche to impose other limitations that are inconsistent with the text and the statute's purpose and design.").  Defendant Bravo not only fails to acknowledge this important limitation on the application of the judicial exceptions, it wrongly asserts that these exceptions are "broad categories."  Bravo Brief at 9.  The entirety of Bravo's argument is tainted with this misstatement of the applicable legal standard.

### 3.   Bravo Must Establish that the Claims of the `516 Patent and Reexamination Certificate are Not Patent Eligible by Clear and Convincing Evidence

Moreover, it is well-established that, in a case such as this involving an issued patent, it is presumed that the `516 Patent covers only patent-eligible subject matter.  As the Federal Circuit declared in *Ultramercial*:

> As a practical matter, because judicially acknowledged exceptions could eviscerate the statute, application of this presumption and its attendant evidentiary burden is consistent with the Supreme Court's admonition to cabin exceptions to § 101.  Further, applying the presumption is consistent with patent office practice. Before issuing a patent, the Patent Office rejects claims if they are drawn to ineligible subject matter, just as it rejects claims if not compliant with §§ 102, 103, or 112. With one exception, the Supreme Court's decisions since 1952 have addressed the propriety of those decisions. Thus, when a patent issues, it does so after the Patent Office assesses and endorses its eligibility under § 101, just as it assesses and endorses its patentability under the other provisions of Title 35.

722 F.3d at 1342.  In this case, the Patent Office has reviewed the issued claims of the `516 Patent twice – once during the original prosecution and again during reexamination – and found those claims eligible under § 101.  Thus, Bravo must establish that the claims of the `516 Patent

and Reexamination Certificate are not patent eligible by clear and convincing evidence. Defendant Bravo conveniently neglects to mention these facts and the resulting high level proof it must satisfy to establish lack of patent-eligibility.

4.     **The Abstract Ideas Exception Applies Only to Preexisting Fundamental Truths, Such as Mathematical Formulas, that are Equivalent to a Law of Nature**

Bravo asserts that all of the claims of the `516 Patent and the Reexamination Certificate are unpatentable because they "are directed to mental steps and abstract ideas." Bravo Brief at 1. The Federal Circuit in *Ultramerical* observed that "[m]embers of both the Supreme Court and this court have recognized the difficulty of providing a precise formula or definition for the abstract concept of abstractness." 722 F.3d at 1343.[2] This is largely attributable to the fact that, as the Supreme Court recognized, "all inventions at some level embody, use, reflect, rest upon or apply … abstract ideas." *Mayo*, 132 S. Ct. at 1293. "Any claim can be stripped down, simplified, generalized, or paraphrased to remove all of its concrete limitations, until at its core, something that could be characterized as an abstract idea is revealed." *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1298 (Fed. Cir. 2013). As a result, anytime a court

---

[2]  *See also CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1277 (Fed. Cir. 2013) ("[D]eciding whether or not a particular claim is abstract can feel subjective and unsystematic, and the debate often trends toward the metaphysical, littered with unhelpful analogies and generalizations."); *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1259 (Fed. Cir. 2012) ("When it comes to explaining what is to be understood by 'abstract ideas' in terms that are something less than abstract, courts have been less successful."); Donald S. Chisum, *Weeds and Seeds in the Supreme Court's Business Method Patents Decision: New Directions for Regulating Patent Scope*, 15 Lewis & Clark L. Rev. 11, 14 (2011) (The "abstract idea preemption inquiry can lead to subjectively-derived, arbitrary and unpredictable results. This uncertainty does substantial harm to the effective operation of the patent system."). And that general problem is particularly pronounced in the computer- implemented invention context. Many functions that were traditionally performed in the mechanical or analog world can now be discharged digitally in the virtual world far more efficiently, which is why software is the medium of choice for both implementation and innovation. *See* Marc Andreessen, *Why Software Is Eating The World*, Wall St. J. (Aug. 20, 2011), http://on.wsj.com/1aD0OUh.

begins its analysis by looking for an abstract idea, it is surely going to find one. But pursuing that approach to its logical end would "eviscerate patent law." *Mayo*, 132 S. Ct. at 1293.

Notwithstanding the difficulty in defining the concept of "abstract ideas" with precision, the Supreme Court has explained that the abstract ideas exception applies only to those preexisting fundamental truths, such as mathematical formulas, that are "equivalent" to a law of nature and that "exist[ ] in principle apart from any human action." *Mayo,* 132 S. Ct. at 1297-98. The purpose of the abstract ideas exception, as with other exceptions the Supreme Court has identified, is to avoid foreclosure of the "basic tools of scientific and technological work." *Gottschalk* v. *Benson*, 409 U.S. 63, 67 (1972). Thus, the abstract ideas exception applies only to fundamental truths – *i.e.*, "mathematical formulas and the like," *Mayo*, 132 S. Ct. at 1303. The Court reaffirmed this understanding of abstract ideas in *Bilski*, 130 S. Ct. at 3225, and held ineligible a claim to a "'fundamental economic practice'" that had been "reduced to a mathematical formula." *Id.* at 3231. Indeed, this is the only understanding of the abstract ideas exception that is "consistent with" and does not "deviate from" the statutory text. *Id.* at 3225-26.

For example, in *Diamond v. Diehr*, 450 U.S. 175 (1981), the Supreme Court assessed a process for curing rubber using a mathematical formula (the Arrhenius equation) and a programmed computer. The claimed process was patent-eligible because, although it "admittedly employ[ed] a well-known mathematical equation," the inventors did "not seek to pre-empt the use of that equation. Rather, they [sought] only to foreclose from others the use of that equation in conjunction with all of the other steps in their claimed process," including "installing rubber in a press, closing the mold, constantly determining the temperature of the mold, constantly recalculating the appropriate cure time through the use of the formula and a digital computer, and automatically opening the press at the proper time." 450 U.S. at 187.

Throughout the analysis, the Court explicitly equated "abstract ideas" with the notion of a mathematical "algorithm," which the Court defined as a "procedure for solving a given type of mathematical problem," *id.* at 186 – not with generic, disembodied concepts or any other kind of "abstract idea." *See id.* at 191-92 ("We recognize, of course, that when a claim recites a mathematical formula (or scientific principle or phenomenon of nature), an inquiry must be made into whether the claim is seeking patent protection for that formula in the abstract.").

Similarly, in both *Parker v. Flook*, 437 U.S. 584 (1978) and *Benson*, the Supreme Court applied the abstract ideas exception to mathematical algorithms. In *Flook*, the Supreme Court considered a claimed process for computing an updated "alarm limit" value by measuring the alarm limit, then calculating a new alarm limit using a mathematical formula, then adjusting the alarm limit based on the calculation. 437 U.S. at 596-97. The Court acknowledged that the claimed method was limited to a certain field (catalytic conversion of hydrocarbons) and called for "'post-solution' activity" (adjusting the alarm limit to reflect the calculations), *id.* at 590, but nonetheless held it ineligible because to grant a patent would foreclose "one of the 'basic tools of scientific and technological work.'" *Id.* at 591-92.

In *Benson*, the Supreme Court held ineligible a method for using a computer to implement a mathematical algorithm to convert binary-coded decimal numerals into pure binary numerals because "the patent would wholly pre-empt the mathematical formula and in practical effect would be a patent on the algorithm itself." 409 U.S. at 71-72. And in both cases, the Court treated the "abstract ideas" exception as directed to such fundamental truths. *See Flook*, 437 U.S. at 589 (explaining that *Benson* "[r]eason[ed] that an algorithm, or mathematical formula, is like a law of nature … [and] a law of nature cannot be the subject of a patent."); *id.* at 595 n.18 ("[O]ur holding today is that a claim for an improved

method of calculation . . . is unpatentable subject matter under § 101."); *Benson*, 409 U.S. at 71-72 (declaring ineligible a claim that "would wholly pre-empt the mathematical formula").

Most recently, in *Bilski*, the Supreme Court again held ineligible as an "abstract idea" a patent claim directed to a fundamental truth. The key claims at issue in *Bilski* described "a series of steps instructing how to hedge risk" (claim 1) and that series of steps "articulated … into a simple mathematical formula" (claim 4). The character of the claims, which involved no computer implementation or other use of physical instrumentalities, led the Court to conclude that "[t]he concept of hedging, described in claim 1 and reduced to a mathematical formula in claim 4, is an unpatentable abstract idea, *just like the algorithms at issue in* Benson *and* Flook." *Id.* at 3231 (emphasis added). The Court explained that its rationale for declaring the claims ineligible was to permit continued public access to the "'fundamental economic practice'" the applicants had claimed: "Allowing petitioners to patent risk hedging would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea." *Id.*; see also *id.* at 3227 (plurality) (describing "the larger object" of the patent law to be "securing patents for valuable inventions without transgressing the public domain").

Thus, in each of these cases the Court applied the "abstract ideas" exception solely to fundamental or mathematical truths, which, whether known or unknown, "exist[ ] in principle apart from any human action," *Mayo*, 132 S. Ct. at 1297.

### 5.    A Computer Implemented Invention is a Patentable Machine and Cannot be an Abstract Idea in the Disembodied Concept Sense

A computer-implemented invention that is either a system (in § 101 terms, a "machine") or method (in § 101 terms, a "process") cannot be an abstract idea in the

disembodied concept sense.  That is because a computer is, without question, a machine. *See Application of Chatfield*, 545 F.2d 152, 157 (C.C.P.A. 1976) ("we find no basis for treating methods of operating computing machine systems differently from methods of operating any other form of machine system"); *Burr* v. *Duryee*, 68 U.S. (1 Wall.) 531, 570 (1863) ("A machine is not a principle or an idea.").  In fact, a "machine" is one of the types of inventions deemed eligible for patenting under the express terms of § 101.  In addition, the Supreme Court has stated that use of a machine in a process is "an important and useful clue" to patent eligibility.  *Bilski,* 130 S. Ct. at 3226.  Thus, a computer-implemented invention cannot be a claim to merely a mental process.

### 6.    A Claim to the Application of an Abstract Idea is Patent Eligible

Importantly, the Supreme Court also has repeatedly held that a claim can embrace an abstract idea and be patentable.  *See Mayo*, 132 S. Ct. at 1294 (explaining that the fact that a claim uses a basic tool does not mean it is not eligible for patenting).  Instead, a claim is not patent eligible only if, instead of claiming an application of an abstract idea, the claim is instead to the abstract idea itself.  *See also Bilski*, 130 S. Ct. at 3230 ("[W]hile an abstract idea, law of nature, or mathematical formula could not be patented, an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." (emphasis in original) (internal quotation marks omitted)); *Diehr*, 450 U.S. at 187 ("It is now commonplace that an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection.")

Thus, a claim is not patent eligible if it merely describes an abstract idea or simply adds "apply it."  *See Mayo*, 132 S. Ct. at 1294, 1297.  Similarly, claims that recite only insignificant pre- or post-solution activity, such as steps necessary to any practical use of the formula – *i.e.*, inputting numbers into a mathematical formula, *Bilski*, 130 S. Ct. at 3231, or reporting

13

the results of a mathematical calculation, *Flook*, 437 U.S. at 590 – cannot "transform" an ineligible abstract idea "into a patent-eligible application" of the idea. *Mayo*, 132 S. Ct. at 1298. To allow such a claim would effectively preempt use of the mathematical formula itself, thus removing a "basic tool[ ]," *Benson*, 409 U.S. at 67, from the "storehouse of knowledge," *Funk Bros. Seed v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948).

On the other hand, a claim will be limited meaningfully when, in addition to the abstract idea, the claim recites added limitations that are essential to the invention. In those instances, the added limitations do more than recite pre- or post-solution activity, they are central to the solution itself. In such circumstances, the abstract idea is not wholly pre-empted; it is only preempted when practiced in conjunction with the other necessary elements of the claimed invention. *See Diehr*, 450 U.S. at 187 ("[T]he respondents here do not seek to patent a mathematical formula. Instead, they seek patent protection for a process of curing synthetic rubber. Their process admittedly employs a well-known mathematical equation, but they do not seek to pre-empt the use of that equation. Rather, they seek only to foreclose from others the use of that equation in conjunction with all of the other steps in their claimed process.").

These precedents demonstrate that the patent eligibility of computer-implemented inventions is determined using the same principles as other inventions. Simply put, if the claim would preempt the use of a fundamental truth such as a mathematical formula or the like, the claim is ineligible. *See Examination Guidelines*, 61 Fed. Reg. 7478, 7484 (1996) ("A claimed process that consists solely of mathematical operations is non-statutory whether or not it is performed on a computer."). That is, if the claim recites a fundamental truth or mathematical formula and an instruction to "apply it on a computer" (or an equivalent instruction), or to take other steps inherent to use of the formula, it fails to meet the requirement of § 101. If the claim does not, on its face, recite a mathematical formula or

other fundamental truth, it is eligible.   Also, if the claim recites a particular application of a mathematical formula or fundamental truth, such that others would not be foreclosed from using the formula in other practical applications, it is eligible.

> **7.     At this Stage of the Proceedings Bravo Must Establish that the Only Plausible Construction of Each Claim Renders the Subject Matter of the Claim Ineligible as a Matter of Law by Clear and Convincing Evidence**

Bravo's burden to establish that all of the claims of the `516 Patent and the Reexamination Certificate are not patent eligible under § 101 is even heavier than usual, given that this case is in its early stages without any claim construction ruling by this Court.   As the Federal Circuit observed in *Ultramerical,* "it will be rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter.   This is so because every issued patent is presumed to have been issued properly, absent clear and convincing evidence to the contrary." 722 F.3d at 1338-1339 (Fed. Cir. 2013).   "Thus," the Federal Circuit held, "the only plausible reading of the patent must be that there is clear and convincing evidence of ineligibility."   *Id.*[3] *See also id.* at 1349 ("In this procedural posture, the district court should either have construed the claims in accordance with *Markman*, required the defendant to establish that the only plausible construction was one that, by clear and convincing evidence rendered the subject matter ineligible (with no factual inquiries), or adopted a construction most favorable to the patentee.").

---

[3]   Although Bravo has filed a motion for summary judgment instead of a motion to dismiss, seeking, to have all of the claims of the `516 Patent and the Reexamination Certificate found ineligible for patentability under § 101, the procedural posture of this Bravo's motion is essentially the same as a motion to dismiss.   This Court has not construed any of the claims of the patent in suit, and Bravo asserts that no claim construction is necessary to resolve its motion. Bravo Brief at 1-2, 9 and n.6.

**B.     The Claims of the `516 Patent and the Reexamination Certificate are Patent Eligible Under § 101**

**1.     The Claims of the `516 Patent and the Reexamination Certificate are Computer Implemented Inventions Qualifying as Eligible Subject Matter under § 101**

All of the claims of the `516 Patent and Reexamination Certificate are limited to a computerized system or method.  This is clear from the express claim language and confirmed by the Texas court's claim construction ruling.  As discussed above, computer systems are "machines" expressly qualifying as eligible subject matter under § 101.  In addition, 35 U.S.C § 100(b) expressly provides that the statutory definition of a "process" "includes a new use of a known . . . machine" – such as new use of a known general-purpose computer through software that brings about new configurations of electronic circuits to perform new functions. The computerized methods claimed in the `516 Patent, therefore, fall within the term "process" used in § 101.  *See also Ultramercial*, 722 F.3d at 1349 ("As a method, it easily satisfies § 100's definition of 'process' and thus falls within a § 101 category of patent-eligible subject matter.") Thus, the computer implemented inventions of the `516 Patent are formally drawn to patentable subject matter pursuant to § 101.

The fact that all of the claims of the `516 Patent require computerization refutes Bravo's assertion that the claims are not patent eligible because they claim only a mental process.  The claims require a database of food objects, Picture Menus displayed to a user via a "User Interface" enabling a user may choose meals for a particular time period to correspond to a customized eating plan, and a Meal Builder allowing a user to edit or create new meals and view the meals' impact on the user's customized eating goals.  The Texas court found that the "customized eating goals" must be computer implemented.  The computerized system claims, as claims to a machine, clearly do not claim a mental **process**.  The computerized method claims of

the `516 Patent requiring this computerized functionality cannot be performed by the human mind alone. Furthermore, the computerized aspects of the claims of the `516 Patent are central to the claimed inventions.

Although Bravo asserts that "the `516 patent discloses only a general purpose computer, not come specialized machine," Bravo MSJ Brief at 8, this argument is expressly refuted by the Federal Circuit's decision in *In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994) (*en banc*). In that case, the Federal Circuit recognized that a general purpose computer computer programmed to perform a specific function is a new machine with individualized circuitry created and used by the operation of the software. 33 F.3d at 1545. The combination of machine and software "creates a new machine, because a general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software." *Id.*

Similarly, although Bravo asserts that "[n]or does the `516 patent identify any particular algorithm or intricate computer programming or software by which the basic computer helps to perform the meal planning," Bravo MSJ Brief at 8, this argument also ignores the fact that disclosure of detailed software programming in a computer implemented invention is not required. As the PTO has explained, "[c]omputer-implemented inventions are often disclosed and claimed in terms of their functionality. This is because writing computer programming code for software to perform specific functions is normally within the skill of the art once those functions have been adequately disclosed. *Manual of Patent Examining Procedure* § 2161.01(I), at 2100-178 (rev. Aug. 2012) (citing *Fonar Corp. v. General Elec. Co.,* 107 F.3d 1543, 1549, 41 USPQ2d 1801, 1805 (Fed. Cir. 1997)).

2.      **The Claims of the `516 Patent and the Reexamination Certificate Do Not Claim an Abstract Idea**

Although Bravo contends that the `516 Patent "claims nothing more than the mental process and abstract concept of meal planning to meet nutritional goals," Bravo MSJ Brief at 1, the express language of those claims and the construction of those claims by the Texas court refute this contention.

The `516 Patent does not claim any fundamental truth.  Nowhere do the claims recite a mathematical formula, or a fundamental practice that can be "reduced to a mathematical formula," *Bilski*, 130 S. Ct. at 3231, or any other form of fundamental truth that "exists in principle apart from any human action," *Mayo*, 132 S. Ct. at 1297.  To the contrary, the system claims of the `516 Patent recite a computer-implemented system requiring a specific configuration of computer hardware and software, with specified functions.  This includes a database, a user interface, a display of Picture Menus from which a user can select a meal to meet a "customized eating goal," and a Meal Builder with specified functionality, including the ability to enable a user to create and display a meal as well as change a meal and view the impact of any change on the user's "customized eating goal."  The user's "customized eating goals" must be computer implemented, as the Texas court found.  The method claims recite a specific series of steps requiring substantially similar computer software and hardware and functionality.  The numerous dependent claims recite additional computer related functionality.  The claims require a substantial and meaningful role for the computer – beyond merely performing computations more quickly or accurately than a person could do with pencil and paper.  The ability to display Picture Menus from which the user can select meals to meet a customized eating goal is fundamental to the solution to the problems with the state of the art provided by the `516 Patent.  So is the ability to create or change a meal and view the impact of the change on a

customized eating goal using the Meal Builder computer program.  These and other computer related limitations of the claims are central to the ability of the invention to provide visual techniques for training individuals to modify dietary behavior.  Bravo's argument ignores these limitations.

The specific claim limitations – including in particular the limitations calling for a particular form of computer implementation – preclude any conclusion that the invention as claimed is directed to an idea in itself.  The claims do not cover the general concept of meal planning to meet nutritional goals or foreclose the use of any abstract idea relating to planning a meal.  Instead, they prescribe one particular way of training persons to use visual techniques to modify dietary behavior by using a computer in a particular way.  The claims of the `516 Patent thus stand in stark contrast to the claims at issue in *Benson*, *Flook*, *Bilski*, and *Mayo*. In each of those cases, the Court made clear that the claims recited nothing more than an abstract idea or law of nature and – at most – entirely insignificant post-solution activity.

The claims of the `516 Patent, by their terms, are directed to eligible subject matter under § 101.  Under a proper analysis, a claim that on its face recites a statutory category of invention, and does not on its face recite a law of nature or a fundamental truth like a mathematical formula, passes muster under § 101, and its ultimate patentability is determined by the other statutory criteria.  That is true of the claims of the `516 Patent.  The claims do not, as written, recite any fundamental truth.  The `516 Patent claims do not purport to claim all practical applications of meal planning meal planning to meet nutritional goals.  Because the claims do not even *recite* a fundamental truth, they cannot, *a fortiori*, "tie up" all practical uses of any fundamental truth.  *Mayo*, 132 S. Ct. at 1301.  Moreover, even if they were somehow found to incorporate a fundamental truth, the claims – read as a whole – do not

preempt the use of any fundamental truth as such, but instead apply it in a narrow and specific way.

### 3. The Federal Circuit and District Court Cases Cited by Bravo are Distinguishable

Bravo cites a number of Federal Circuit and District Court decisions which are clearly distinguishable from the facts in this case. For example, Bravo cites the recent decision of *Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341-1342 (Fed. Cir. 2013). In that case, however, the district court held that the method claims of the patent were invalid under § 101 and that judgment was not appealed by the patentee. The Federal Circuit held that, the district court's decision on patent-ineligibility of the system claims also had to be affirmed because the system claims offered no meaningful limitations beyond the method claims that were held patent-ineligible. *Id*. at 1341-42. The court also observed that the abstract idea at the heart of system claims the patent was "generating tasks [based on] rules . . . to be completed upon the occurrence of an event." *Id*. at 1344. The court rejected the patentee's contention that applying the abstract idea in a computer environment and within the insurance industry was sufficient to transform a patent-ineligible claim into a patent-eligible one. *Id*. at 1345. The court found that the system claims in the patent contain only generalized steps of generating a task in response to events. The system claims in *Accenture* did not have any of the meaningful computer related limitations that are central to the claims of the `516 Patent.

Bravo also relies on the *CLS* en banc decision of the Federal Circuit. Although it was hoped that this *en banc* decision would clarify the legal standard applicable to § 101 challenges to patent claims, the Federal Circuit decision in this case comprises a plethora of opinions, none of which garnered a majority. Thus, as Judge Radar commented in his opinion in that case, "though much is published today discussing the proper approach to the patent eligibility inquiry,

nothing said today beyond our judgment has the weight of precedent." 717 F.3d 1269, 1292 n.1. The *CLS* decision dealt only with method claims which were found to claim the abstract idea of reducing settlement risk by effecting trades through a third-party intermediary. The court also found that none of the computer related limitations added anything of substance to the claim constituting nothing more than "insignificant post-solution activity" relative to the abstract idea.[4]

Bravo also cites *Bancorp Servs. L.L.C. v. Sun Life Assur. Co. of Canada (U.S.), L.L.C.*, 687 F.3d 1266, 1278 (Fed. Cir. 2012). In *Bancorp*, the court found a system claim comprising digital storage, a policy generator, a debtor, and various calculators patent-ineligible because the limitations of that claim were directed to no more than the abstract idea of managing a stable value protected life insurance policy. *Bancorp*, 687 F.3d at 1272, 1280-81.

In *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 2013 U.S. Dist. LEXIS 166852, 26-28 (S.D.N.Y. Nov. 22, 2013), also relied upon by Bravo, the court observed that the core of the claimed process in claim 1 of the patent in suit was "the abstract idea of bilateral and multilateral matchmaking." *Id.* at *30. The court found that "the matchmaking functions claimed do not require a computer to be performed," and the patent "only claims the abstract concept of computerized matchmaking in a business or enterprise context." *Id.* at *29-30.

Bravo's reliance on *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) is misguided. In *CyberSource*, the court emphasized that **every single step** of the method claim at issue could be performed in the human mind. *Id.* at 1373. The court held that such a method is "unpatentable **not** because there is anything wrong with claiming mental

---

[4] Given that the Supreme Court has granted the petition for writ of certiorari in the *CLS* case and oral argument in that case was held on March 31, 2014, proceeding with Bravo's motion for summary judgment on §101 grounds before the Supreme Court issues its ruling in that case, certain to give the parties and the Court important guidance on the issue, would be a waste of judicial and party resources.

method steps as part of a process containing non-mental steps, but rather because computational methods which can be performed *entirely* in the human mind are… 'basic tools of scientific and technological work' that are free to all."   *Id.*   The second claim the court analyzed was a "Beauregard claim" directed to a computer readable medium "containing program instructions for a computer to perform a particular process" that recited the steps of "obtaining credit card information," "verifying the credit card information," "constructing a map," and "utilizing the map…to determine if the credit card transaction is valid."   *Id.* at 1373-74.   Despite its recitation of "a computer readable medium," the court treated this claim as a method claim and found it to be equally unpatentable for the same reasons.   *Id.* at 1374-75.

Unlike the claims in *CyberSource*, where all of the recited method steps could be performed entirely in the human mind, the claims of the '516 Patent cannot be performed or implemented without a computerized system or program.   Independent Claims 1 and 2, which are not method claims, recite "a system of computerized meal planning" that comprises a computerized "User Interface," a "Database of food objects," and "at least one Picture Menus" and "a Meal Builder," respectively.   The "at least one Picture Menus" must be structured so that it "displays on the User Interface meals from the Database that a user can select from to meet customized eating goal."   The "Meal Builder" must be structured so that it "displays on the User Interface meals from the Database, and wherein a user can change content of said meals and view the resulting meals' impact on customized eating goals."   Such a system cannot be "performed in the human mind." The human mind cannot be a computerized system with a User Interface, a Database, and either a "Picture Menus" or a "Meal Builder" that allow for interactive displaying of meals from the Database.

Bravo cites a number of other Federal Circuit and District Court decisions, but, as with the cases discussed above, these decisions involve distinguishable claims and non-apposite

reasoning.  The patent eligibility of the claims of the `516 Patent must be decided based upon the language of the claims as a whole in the Patent and controlling Supreme Court authority on this issue.

## IV.   CONCLUSION

Bravo has failed to show that the only plausible reading of the claims of the `516 Patent establishes by clear and convincing evidence that all of those claims fail to recite patent eligible subject matter as a matter of law.  It is undisputed that all of the system claims of the `516 Patent are directed at a computer-implemented invention, which falls within the "machine" category of patent eligible inventions.  Similarly, the method claims of the `516 Patent also are directed to a computerized method and recite a specific series of steps requiring computer software and hardware and functionality and, therefore fall within the "process" category of patent eligible inventions.  The claims do not recite a law of nature or a fundamental truth like a mathematical formula.  Thus, the claims are patent eligible.  For all of these reasons, the Court should deny Bravo's motion for summary judgment.

Dated:  April 7, 2014                          Respectfully submitted,

                                               **BUETHER JOE & CARPENTER, LLC**


                                               By:   */s/ Eric W. Buether*_____
                                                     Eric W. Buether
                                                     *Appearing Pro Hac Vice*
                                                     Eric.Buether@BJCIPLaw.com
                                                     Christopher M. Joe
                                                     *Appearing Pro Hac Vice*
                                                     Chris.Joe@BJCIPLaw.com
                                                     Michael D. Ricketts
                                                     *Appearing Pro Hac Vice*
                                                     Mickey.Ricketts@BJCIPLaw.com

                                                     1700 Pacific Avenue
                                                     Suite 4750
                                                     Dallas, Texas 75201
                                                     Telephone:    (214) 466-1271
                                                     Facsimile:    (214) 635-1827

                                                     **ATTORNEYS FOR PLAINTIFF**
                                                     **DIETGOAL INNOVATIONS LLC**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 7th day of April, 2014.  Any other counsel of record will be served by facsimile transmission and first class mail.

*/s/ Eric W. Buether*
Eric W. Buether

25