

Eric W. Buether
Eric.Buether@BJCIPLaw.com

214.466.1271 / Direct Dial
214.635.1827 / Direct Fax

June 26, 2014

*Via ECF*

Judge Paul A. Engelmayer
Courtroom 1305
U.S. Courthouse, 40 Foley Square
New York, NY  10007

      Re:    Civil Action No. 13-cv-08391 (PAE);
                *DietGoal Innovations LLC v. Bravo Media LLC (Division of NBC Universal Media, LLC)*;
                U.S. District Court, Southern District of New York

Dear Judge Engelmayer:

      Pursuant to the Court's Order dated June 24, 2014 (Dkt No. 145), Plaintiff DietGoal Innovations LLC hereby submits the following letter brief in light of the Supreme Court's recent decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. ___ (2014) (copy attached as Exhibit A).

      **1.**    **No Showing of Pre-emption of Abstract Idea**

      The Court in *Alice* initially emphasized that "the concern that drives" the implicit exception that laws of nature, natural phenomena, and abstract ideas are not patentable is "one of pre-emption." Slip Op. at 5-6 (citing *Bilski* v. *Kappos*, 561 U. S. 593, 611–612 (2010) (upholding the patent "would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea"). Although Bravo has asserted that "the `516 patent's claims attempt to preempt the whole concept and mental process of planning a meal by choosing menu items to meet one's eating goals," this overbroad contention ignores the specific limitations in each claim that confine the system or method to a specific application of computerized meal planning.

      For example, independent Claim 1 requires "at least one Picture Menus, which displays on the User Interface meals from the Database that a user can select from to meet

Judge Paul A. Engelmayer
June 26, 2014
Page 2

customized eating goal[s]." The Texas court construed "Picture Menus" to mean "a visual display of at least one image of a meal that a user can select a meal from." Thus, the system of Claim 1 must visually display an image of a meal together with other information enabling users to select a meal from the displayed meals to meet the user's customized eating goals, in addition to the other structural limitations of the claim. Independent method Claim 13 also contains the same "Picture Menus" limitation. This limitation in these system and method claims materially restricts the scope of Claim 1 and the other asserted claims that depend from it to a particular application so as not to cover all practical means of meal planning to meet nutritional goals. Bravo has not pointed to any evidence in the record establishing that performing the "Picture Menus" function is inherent to performing meal planning to meet nutritional goals.

Similarly, independent Claim 2 requires a "Meal Builder" with the ability to display meals, and enable a user to create or change a meal and view the impact of any change on the user's "customized eating goal." The Texas court construed "Meal Builder" to mean "a computer program that allows the user to create or change a meal and view the meal's impact on customized eating goals." Once again, this is a material limitation that precludes Claim 2 and the other asserted claims depending from it from pre-empting all uses of meal planning to meet nutritional goals. The claimed system must contain a computer program that is specifically programed to allow a user to create or change meals interactively and then view the resulting meal's impact on the user's customized eating goals. The display functionality required by the "Picture Menus" and "Meal Builder" limitations are not limited to general display functionality of a computer monitor or screen. That display functionality is highly particularized. Again Bravo does not point to any evidence in the record establishing that the Meal Builder's function of displaying meals, and enabling a user to create or change a meal and view the impact of any change on the user's dietary objectives is inherent to performing meal planning to meet nutritional goals.

Other asserted claims dependent on Claims 1 or 2 contain additional limitations that make it clear that the claims are not directed to the abstract idea of meal planning to meet nutritional goals itself, but to a non-routine and specific application of meal planning. For example, Claim 24 adds the requirement that "one or more displayed meals correspond to at least one of a selected nutritional value, a selected caloric value, a selected personal characteristic, and a selected activity level." This required correspondence of a displayed meal to a selected and specified value clearly establishes that this claim does not pre-empt all forms of meal planning to meet nutritional goals. Claim 30 contains the additional requirement that "the User Interface displays at least one customized eating goal for selection by the user," and further adds the requirement that, "wherein a meal is added to or removed from display on the User Interface in response to selection of one or more of the at least one customized eating goals." Bravo does not point to any evidence that performing meal planning to meet nutritional goals necessarily involves performing either of these required functions. These limitations constrain the scope of these claims to covering only a non-

Judge Paul A. Engelmayer
June 26, 2014
Page 3

routine and specific application of meal planning, and prevent them from preempting the abstract idea of meal planning to meet nutritional goals.

### 2. The Patent-Eligibility Determination Must be Conducted on a Claim-By-Claim and Element-By-Element Basis

The Court in *Alice* reiterated the two-step framework established in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. ___, 132 S. Ct. 1289 (2012), for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts. "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, '[w]hat else is there in the claims before us?'" Slip Op. at 7 (citations omitted). "To answer that question," the *Alice* Court emphasized, "we consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application." *Id.* (citations omitted). Thus, the determination of patent-eligibility must be conducted on a claim-by-claim basis, and must consider the elements of each claim in this manner. Bravo's motion for summary judgment fails to provide such a required analysis.

### 3. Bravo Has Not Shown that the Limitations of Each Claim Reflect Merely Generic Computer Implementation and Well-understood, Routine, Conventional Activities Previously Known to the Industry.

The *Alice* Court, in addressing the patent-eligibility of the claims at issue in the case before it, held that "the claims at issue are drawn to the abstract idea of intermediated settlement, and that merely requiring generic computer implementation fails to transform that abstract idea into a patent-eligible invention." Slip Op. at 1. *See also* Slip Op. at 10 ("we conclude that the method claims, which merely require generic computer implementation, fail to transform that abstract idea into a patent-eligible invention.") The Court explained that its earlier decisions "demonstrate that the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention. Stating an abstract idea "while adding the words 'apply it'" is not enough for patent eligibility." Slip Op. at 13. *See also id.* ("wholly generic computer implementation is not generally the sort of "additional featur[e]" that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'") (citations omitted); and Slip op. at 15 ("all of these computer functions are 'well-understood, routine, conventional activit[ies]' previously known to the industry.")

The limitations in the claims of the `516 Patent discussed above, however, do not reflect mere generic computer implementation and well-understood, routine, conventional activities previously known to the industry. These limitations do not merely add the words "apply it" or their equivalents to an abstract concept. Slip Op. at 11. Significantly,

Judge Paul A. Engelmayer
June 26, 2014
Page 4

Bravo has not submitted any evidence to this effect and only provides attorney argument. For example, there is no evidence that the functionality performed by the claimed "Picture Menus" or "Meal Builder" constitutes generic computer implementation. Bravo has not shown that this functionality involves only a well-understood, routine, conventional activity previously known to the industry. Bravo has not shown that the claims of the `516 Patent "could be 'carried out in existing computers long in use.'" Slip Op. at 12 (quoting *Gottschalk* v. *Benson*, 409 U. S. 63, 67 (1972)). The same is true of the other limitations discussed above. Unlike in *Alice*, Bravo has not shown that each of the claims of the `516 Patent "do[] no more than require a generic computer to perform generic computer functions." Slip Op. at 15.

Importantly, these added limitations do more than recite pre- or post-solution activity. They are central to the solution offered by the `516 Patent itself. The "Picture Menus" limitation is central to the invention's objective of providing **visual techniques** for training individuals to modify dietary behavior. *See* `516 Patent, Abstract and Col. 1:8-10 (emphasis added). Similarly, the "Menu Builder" limitation is central to the invention's objective to train people to understand and immediately recognize the significance of the impact of customized meals on dietary goals. *See id.* at Col. 1:24-50. The other recited limitations also play an important role in achieving the objectives of the invention. In these circumstances, the abstract idea of meal planning to meet nutritional values is not wholly pre-empted; it is only preempted when practiced in conjunction with these other necessary, non-routine, computer-implemented elements of the claimed invention.

Although the *Alice* Court observed that "[t]he introduction of a computer into the claims does not alter the analysis at *Mayo* step two," slip op. at 11, the Court emphasized that "[t]here is no dispute that a computer is a tangible system (in §101 terms, a "machine"), or that many computer-implemented claims are formally addressed to patent-eligible subject matter. Slip Op. at 13-14. In the final analysis, the Court observed that, "if a patent's recitation of a computer amounts to a mere instruction to "implemen[t]" an abstract idea "on . . . a computer," that addition cannot impart patent eligibility. Slip Op. at 13 (citation omitted); *see also* slip op. at 14. In this case, as explained above, the limitations present in the claims of the `516 Patent do more than merely instruct someone to implement meal planning to meet dietary goals on a computer. They are patent-eligible because they improve the existing technology for meal planning by adding the particularized functionality of "Picture Menus," "Meal Builder" and the other limitations discussed above. Slip Op. at 13 ("the claims in *Diehr* were patent eligible because they improved an existing technological process, not because they were implemented on a computer.")

### 4. Conclusion

The *Alice* decision demonstrates that Bravo has failed to sustain its heavy burden to prove by clear and convincing evidence that all of the claims of the `516 Patent are not

directed at patent-eligible subject matter. Bravo has failed to submit evidence showing that the specific limitations in each of the claims constitute mere generic computer implementation and well-understood, routine, conventional activities previously known to the industry. On their face, these limitations do not merely state an abstract concept of meal planning and then add an instruction to apply the abstract idea using some unspecified, generic computer.

Sincerely,

Eric W. Buether

EWB:nn
cc:     Counsel of Record