# KLARQUIST SPARKMAN, LLP
PATENTS, TRADEMARKS, COPYRIGHTS & LITIGATION • SINCE 1941

June 26, 2014

**J. CHRISTOPHER CARRAWAY**
Attorney
chris.carraway@klarquist.com

Filed Via ECF
Hon. Paul A. Engelmayer
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

   RE: *DietGoal Innovations, LLC v. Bravo Media LLC*, Case No. 1:13-cv-08391-PAE
      Letter Brief Regarding *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*

Dear Judge Engelmayer:

  Pursuant to the Court's order of June 24, 2014, Defendant Bravo Media LLC ("Bravo") provides this letter brief setting forth its views of how the Supreme Court's recent decision in *Alice Corp. Pty. Ltd. v. CLS Bank International*, No. 13-298 (June 19, 2014) ("*Alice*") affects Bravo's Motion for Summary Judgment of Patent Ineligibility Pursuant to 35 U.S.C. § 101 (Dkt. 127). In *Alice*, the Supreme Court made positively certain that merely implementing on a computer basic concepts that humans have performed for some time, as DietGoal's patent does, is ***not*** patentable.

  In *Alice*, the unanimous Supreme Court affirmed the Federal Circuit plurality's decision that each and every computer-implemented claim in Alice Corp.'s patent was ***ineligible*** under 35 USC § 101, including all of the method and computer system claims. In doing so, the Court expressly rejected the same outdated arguments made by DietGoal in its opposition brief in this case. For example, the Supreme Court rejected the same argument made by DietGoal that adding a computer and generic computer components to a claim can transform an abstract concept into a patentable one. *Alice*, slip op. at 13. Instead, the Court made clear that "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id*. Likewise, the Court rejected the argument made by DietGoal that the "abstract concept" prohibition is somehow limited to "fundamental truths" and "mathematical formulas," *id*. at 9-10, holding instead that abstract concepts encompass methods "of organizing human activity," such as the hedging found to be abstract in *Bilski*. *Id*. at 10. In the end, the *Alice* decision does nothing but confirm that DietGoal's claims, like Alice Corp.'s, encompass nothing but abstract ideas for which patents are not permitted. Just like Alice Corp. in its case, DietGoal's arguments pretend that *Bilski* and its progeny never happened. To the contrary, *Alice* is the icing on a long line of cases since *Bilski* that makes clear that attempting to patent a basic human activity (such as meal planning, hedging, or matchmaking) merely by adding a computer is not permissible under § 101.

ONE WORLD TRADE CENTER
121 S.W. SALMON STREET, SUITE 1600
PORTLAND, OREGON 97204

WWW.KLARQUIST.COM

PHONE: 503-595-5300
FAX: 503-595-5301

MEMBER OF THE OREGON STATE BAR, WASHINGTON STATE BAR, MONTANA STATE BAR



Hon. Paul A. Engelmayer<br>
June 26, 2014<br>
Page 2 of 5

A.      **Background of the *Alice* Case**

The Alice patent included claims for a computer-implemented method and system for "for mitigating 'settlement risk' (*i.e.*, the risk that only one party to a financial transaction will pay what it owes) by using a third-party intermediary." *Id*. at 1. In the claims, a computer system served as the third party intermediary. *Id*. at 2. The exemplary method claim was quite long, taking up nearly half a page of the opinion. *See id*. at 2, n.2. Like the DietGoal claims, the *Alice* claims also recited various generic computer components, including a "data processing system" with a "communications controller" and "data storage unit." *Id*. at 16. The district court granted summary judgment that all of Alice Corp.'s claims were ineligible for a patent under § 101. *Id*. at 3-4.

The Federal Circuit, sitting *en banc*, issued a number of differing opinions. A plurality opinion of five of the ten judges held that all claims—method, system, and computer readable media claims—were ***not*** eligible for a patent, thereby affirming the district court. *Id*. at 4. A minority opinion of four judges would have found the method and media claims ineligible but would have found the system claims eligible due to the presence of generic computer terms such as controller and data storage unit. *Id*. The Supreme Court's unanimous opinion essentially adopted the judgment of the Federal Circuit plurality, holding that each and every claim failed § 101 because they all encompassed nothing more than an abstract concept.

B.      ***Alice* Confirms the Mayo Two-Step Framework Proposed by Bravo**

The Supreme Court's *Alice* opinion reconfirmed that the general framework set forth in *Mayo Collaborative Services* v. *Prometheus Laboratories, Inc.*, 132 S. Ct. 1269 (2012), which related to the prohibition on natural laws, equally applies to determining whether a patent is ineligible under § 101 for claiming an abstract concept:

> First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, "[w]hat else is there in the claims before us?" To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application.

*Alice*, slip op. at 7. This, of course, is the same framework that Bravo's motion urged this Court to utilize. Dkt. 128, at 9-10.

As set forth in Bravo's briefs, the DietGoal patent fails to pass the *Mayo* test. The claims all encompass an abstract concept of organizing food into meals to meet someone's personal eating goals, which like the Supreme Court found for Alice Corp.'s patent on computerized intermediated settlement, amounts to simply a method and system for "organizing human activity." And just like the claims in *Alice*, the DietGoal claims do not include significant



elements beyond that abstract concept, but instead merely recite generic computer components for performing the concept.  *Alice* makes clear that inserting basic computer components that would be in any computer (such as the database or user interface of the DietGoal claims) does not clear the § 101 hurdle.

### C.     *Alice* Confirms That DietGoal's Patent Claims An Abstract Concept

Alice Corp. argued to the Supreme Court that the subject matter of its patent claims, "exchanging financial obligations between two parties using a third party intermediary to mitigate settlement risk," did not constitute an unpatentable abstract concept because it was not a "mathematical formula or "fundamental truth":

> Petitioner acknowledges that its claims describe intermediated settlement, but rejects the conclusion that its claims recite an "abstract idea." Drawing on the presence of mathematical formulas in some of our abstract-ideas precedents, petitioner contends that the abstract-ideas category is confined to "preexisting, fundamental truth[s]" that "'exis[t] in principle apart from any human action."

*Alice*, slip op. at 9-10 (citations omitted).  This is the same argument that DietGoal made to this Court in its opposition:  "[T]he abstract ideas exception applies only to fundamental truths – *i.e.*, 'mathematical formulas and the like.'"  Dkt. 139, at 10.  Citing *Bilski*, the Supreme Court in *Alice* rejected the argument, as this Court should as well:

> *Bilski* belies petitioner's assertion.  The concept of risk hedging we identified as an abstract idea in that case cannot be described as a "preexisting, fundamental truth."  The patent in *Bilski* simply involved a "series of steps instructing how to hedge risk."  Although hedging is a longstanding commercial practice, ***it is a method of organizing human activity***, not a "truth" about the natural world "'that has always existed.'"  One of the claims in *Bilski* reduced hedging to a mathematical formula, but the Court did not assign any special significance to that fact, much less the sort of talismanic significance petitioner claims.  Instead, the Court grounded its conclusion that all of the claims at issue were abstract ideas in the understanding that risk hedging was a "'fundamental economic practice.'"

*Alice*, slip op. at 10 (citations omitted, emphasis added).

Just like risk hedging in *Bilski*, using an intermediary to minimize settlement risk in *Alice*, and all the Federal Circuit cases cited in Bravo's briefs, DietGoal's patent on planning meals that meet nutritional goals addresses nothing but a "method of organizing human activity" and a "fundamental [human] practice."  DietGoal's opposition gave no other explanation of how meal planning would not be an abstract idea, other than making the same argument that the Supreme Court rejected in *Alice*.



Hon. Paul A. Engelmayer<br />
June 26, 2014<br />
Page 4 of 5

**D.** *Alice* **Confirms That Nothing Else In DietGoal's Claims Makes Them Patentable**

DietGoal's chief argument as to why its claims were more than just the abstract concept of meal planning was to point to the implementation of the concept on a computer, with a few generic computer components such as a database and user interface.  While numerous Federal Circuit and district court decisions discussed in Bravo's brief had held that such computer implementation was not sufficient, *Alice* conclusively confirmed this, building on its earlier cases and resolving that "generic computer implementation fail[s] to transform that abstract idea into a patent eligible invention."  *Id*. at 10.  Citing its earlier *Benson* case, the Court noted that "the computer implementation [in *Benson*] did not supply the necessary inventive concept; the process could be 'carried out in existing computers long in use.'"  *Id*. at 11 (citation omitted).  Likewise, the Court described its *Flook* case as standing "for the proposition that the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment."  *Id*. (citation omitted).

Applying these cases, the Court in *Alice* confirmed that "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  *Id*. at 13.  The Court noted the extensive use of the generic computer in Alice's claimed method: "[T]he claimed method requires the use of a computer to create electronic records, track multiple transactions, and issue simultaneous instructions; in other words, '[t]he computer is itself the intermediary.'"  *Id*. at 14.  Nonetheless, while the computer was used as a tool to make the abstract concept faster and more efficient, that fact was not enough because all the computer was doing was performing functions that computers typically do:

> Taking the claim elements separately, the function performed by the computer at each step of the process is "[p]urely conventional."  Using a computer to create and maintain "shadow" accounts amounts to electronic recordkeeping—one of the most basic functions of a computer. *See*, *e.g.*, *Benson*, 409 U. S., at 65 (noting that a computer "operates . . . upon both new and previously stored data").  The same is true with respect to the use of a computer to obtain data, adjust account balances, and issue automated instructions; all of these computer functions are "well-understood, routine, conventional activit[ies]" previously known to the industry. In short, each step does no more than require a generic computer to perform generic computer functions.

*Id*. at 15 (citations omitted).  Likewise, the Court found that the system claims' recitation of generic computer parts, including a "data processing system," "communications controller," and "data storage unit," was "purely functional and generic" because "[n]early every computer will include those generic components for "performing the basic calculation, storage, and transmission functions."  *Id*. at 16.

In contrast, the Court in *Alice* distinguished its decision in *Diehr* (which DietGoal claimed at oral argument was its "best case").  That distinction shows why DietGoal's reliance



on *Diehr* is unhelpful. While the Court acknowledged that the *Diehr* "computer-implemented process for curing rubber was patent eligible," the Court said that decision was "not because it involved a computer." *Id*. at 13. Instead, the *Diehr* patent was directed to a technological process of curing rubber in an industrial mold, and the claims in *Diehr* were patent-eligible because they "improved an existing technological process." *Id*. at 14. Comparing *Diehr* to Alice Corp.'s claims, the Court explained that they did not "purport to improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field." *Id*. at 15. Instead, the *Alice* claims "amount to 'nothing significantly more' than an instruction to apply the abstract idea of intermediated settlement using some unspecified, generic computer." *Id*.

The Alice opinion confirms that DietGoal's claims add nothing patentable to the abstract concept of meal planning. In its opposition, the ***only*** "something more" that DietGoal raised was the computer implementation, including the recited "database" for storing information and "user interface" for displaying information. *Alice*, rejected this same argument, holding that merely implementing an abstract concept on a computer using components like a database and a user interface, which are found in essentially every computer, does not transform an abstract claim into a patentable one. Further, DietGoal cannot rely on *Diehr* because DietGoal's claims do not improve the functioning of any computer, nor do they improve an existing technological process, such as the industrial rubber curing process in *Diehr*. Instead, DietGoal's claims merely apply a human activity (meal planning) to a general purpose computer.

### E.     Conclusion

*Alice* expressly confirms, in a clear Supreme Court ruling, the legal principles stated in a long line of district court and Federal Circuit cases applying *Bilski* to preclude patents like DietGoal's from monopolizing basic abstract concepts for organizing human activity, even if the patent implements the concept on a computer. DietGoal's entire strategy opposing this motion has been to pretend that all of those post-*Bilski* cases did not exist. *Alice* finally confirms that DietGoal's view of the § 101 issue, like the original Alice herself, is just a fantasy. Because *Alice* confirms all of the arguments made by Bravo in its briefs, Bravo respectfully requests that the Court grant its motion for summary judgment that all of the DietGoal claims are not patent-eligible under 35 U.S.C. § 101.

Sincerely yours,

KLARQUIST SPARKMAN, LLP

J. Christopher Carraway

JCC